Filed 3/28/16  P. v. Gallardo CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE GALLARDO,<br><br>    Defendant and Appellant. | B259668<br><br>(Los Angeles County<br>Super. Ct. No. BA404896) |

APPEAL from a judgment of the Superior Court of Los Angeles County. C. H. Rehm, Jr. Judge.  Affirmed.

Carla Castillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Gallardo appeals from his conviction of first degree murder, contending that there was insufficient evidence of premeditation and deliberation, and that he received ineffective assistance of counsel when his lawyer failed to object to several gang references by witnesses or to the prosecutor's argument concerning the time required to premeditate. We reject these contentions and affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

In accord with the usual rules on appeal, we state the facts in the manner most favorable to the judgment. (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 197, fn. 1.) At around 11:00 p.m. on August 18, 2012, Gilbert Guzman was shot and killed in an alley adjacent to the house where he was attending a backyard wedding reception. When the accounts of several party guests are stitched together, it appears that appellant Jose Gallardo tried to enter the party from the front of the house, then walked down the alley, where he tried to enter through a gate leading into the backyard of the party house. Gallardo was not an invited guest.

As Gallardo walked down the alley toward the gate, he was carrying a beer bottle and sang along to the music coming from the party. Gallardo was in fact intoxicated, having consumed multiple beers along with some methamphetamine. Victim Guzman, who had consumed several beers and some cocaine, was in the alley at the time. When Gallardo tried to enter the party, Guzman put his arm across the gate, told Gallardo it was a family party, and walked him back into the alley toward a car parked nearby. One guest who was also in the alley – Gabriel Reynoso – heard Gallardo ask Guzman, "What do you mean I am nobody?" Another – Cristina Mendoza – asked Guzman whether everything was alright. When Guzman assured her that it was, she returned to the house to use the bathroom and then heard gunshots.

Shortly before the shooting, the owner of the house, Rolando Larios, had retrieved his nine millimeter handgun after learning that someone described as a "Cholo" had tried to enter through the front of the house. Finding nobody by that description out front, Larios went into his backyard, where he saw the gate leading to the alley was open. As

2

Larios looked out into the alley, he saw Guzman, Gallardo, and two other party guests. When Larios looked away after a brief distraction, he heard a gunshot. He saw Gallardo run back down the alley toward the street, firing his gun in Larios's direction, prompting Larios to fire several rounds toward Gallardo.

Gallardo ran off and hid in the backyard of nearby homeowner Francisco Onofre. Onofre called the police, who found Gallardo in the backyard at around 12:40 a.m. (August 19), but did not connect him to the shooting. Instead, Gallardo was taken somewhere to sober up and then released. Gallardo left his cell phone in Onofre's yard and returned later that day (August 19) to retrieve it. Onofre spotted Gallardo, who asked Onofre to open the gate so he could leave. After Onofre pointed a broomstick at him, and Onofre's wife said to call the police, Gallardo said, "Fuck you. I'm gonna come back with my homies and fuck your shit up. I'm Junior from the barrio," and "You don't know who you're messing with." The police arrived soon after and detained Gallardo.

Gallardo was eventually connected to the Guzman shooting and was charged with one count of first degree murder (Pen. Code, § 187), along with making a terrorist threat (Pen. Code, § 422) against Onofre. The information also alleged that each crime was committed for the benefit of a street gang. (Pen. Code, § 186.22.) The trial court granted Gallardo's motion to bifurcate the gang enhancement allegations, and later granted the prosecutor's motion to dismiss those allegations at the close of evidence in the first phase of the trial. There was, thus, no second phase of the trial.

Gallardo testified at his trial, contending that he acted in self-defense. According to Gallardo, he was on his way to a friend's house when he stumbled upon Guzman, who was urinating in the alley. Guzman appeared angry and, in an attempt to calm him, Gallardo said "I'm nobody, fool." That angered Guzman even more. After being briefly joined by Larios, Guzman became increasingly agitated, threatened to harm Gallardo, and came toward him. When Guzman started to pull a gun from his waistband, Gallardo pulled out his own handgun and fired it when Guzman grabbed for it. However, there was no evidence apart from Gallardo's testimony that Guzman was armed at the time. No weapon was found.

3

The jury convicted Gallardo of both first degree murder and making terrorist threats. He contends on appeal that he was guilty of only second degree murder because there was insufficient evidence of premeditation and deliberation. He also contends that he received ineffective assistance of counsel when his lawyer failed to object to several comments by witnesses that portrayed him as a gang member, and to the prosecutor's closing argument analogy concerning the short time span required to show premeditation and deliberation for first degree murder.

## DISCUSSION

1. *There Was Sufficient Evidence of Deliberation and Premeditation*

    1.1. <u>Legal Principles of First Degree Murder</u>

First degree murder is differentiated from second degree murder by the existence of evidence showing premeditation and deliberation. (Pen. Code, §§ 187, subd. (a), 189; *People v. Nazeri* (2010) 187 Cal.App.4th 1101, 1111 (*Nazeri*).) Deliberation refers to a careful weighing of considerations in forming a course of action, while premeditation means to think over in advance. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069 (*Mendoza*).)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), our Supreme Court identified three types of evidence that are useful in determining whether there was sufficient evidence of premeditation and deliberation – planning activity, preexisting motive, and the manner of killing. (*Mendoza, supra,* 52 Cal.4th at p. 1069.) These factors are neither exclusive nor determinative. Instead they simply guide an appellate court's assessment of the evidence. (*People v. Cage* (2015) 62 Cal.4th 256, 276 (*Cage*).)

Premeditation and deliberation do not require an extended period of time. Although they cannot occur in the flicker of an eye, the true test is not the duration of time as much as it is the extent of reflection. The thought process may occur with great speed and a cold, calculated judgment may be arrived at quickly. (*Cage, supra,* 62 Cal.4th at p. 276; *Nazeri, supra,* 187 Cal.App.4th at p. 1114.)

4

Gallardo contends there was insufficient evidence of premeditation or deliberation. We therefore review the record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a rational trier of fact could find him guilty beyond a reasonable doubt. (*Mendoza, supra,* 52 Cal.4th at pp. 1068-1069.)

1.2. <u>The Evidence Shows Deliberation and Premeditation</u>

Gallardo contends there was no evidence of any of the three *Anderson* factors – planning, motive, or manner of killing. Without expressly saying so, Gallardo appears to contend that instead of planning to kill Guzman, the evidence shows as a matter of law that he did so impulsively and rashly. He claims there is no evidence of motive because he did not know Guzman, and that even though the manner of killing – shooting his victim at pointblank range – suggests first degree murder, that factor alone is not enough. We disagree.

First, the *Anderson* factors serve only as analytical guideposts and are neither exclusive nor determinative. (*Cage, supra,* 62 Cal.4th at p. 276.)

Second, the evidence shows that Guzman was shot at close range without provocation or evidence of a struggle, which supports an inference of premeditation and deliberation. (*People v. Thompson* (2010) 49 Cal.4th 79, 114-115.)

Third, Gallardo cites no authority for the proposition that a killer must have already known his victim for a motive to exist. In *Mendoza*, *supra,* 52 Cal.4th 1056, for instance, the defendant shot and killed a police officer who stopped him for questioning. The Supreme Court found substantial evidence that the defendant did so to avoid arrest because he was carrying a firearm while on parole. (*Id.* at pp. 1070-1071.) Nothing in *Mendoza* states that the defendant knew the officer. Instead, the decision suggests that a motive to kill can arise as to a stranger based on unfolding circumstances. As respondent points out, the evidence shows that after being denied entry to the wedding reception, Gallardo asked Guzman, "What do you mean I am nobody?" and then shot him. We agree with respondent that a rational trier of fact could infer from this that Gallardo was motivated by his anger at being denied entry to the party.

5

Fourth, witness Cristina Mendoza testified that she saw Guzman walk Gallardo some distance from the gate to a nearby parked car. She received Guzman's assurance that everything was alright and then walked back across the yard and into the house, where she was using the bathroom when she first heard gunshots. That evidence suggests a somewhat prolonged period that provided Gallardo ample time to reflect on his course of action and make the choice to kill Guzman. Combined with Gallardo's testimony that he shifted his beer bottle from his right hand to his left hand so he could draw his gun, the evidence supports an inference that Gallardo had made a conscious, considered decision to kill Guzman.

These facts differ greatly from those in *People v. Munoz* (1984) 157 Cal.App.3d 999, cited by Gallardo. In *Munoz*, the defendant was the passenger in a car who asked the driver to stop to ask a passerby for directions. As the passerby bent over, the defendant asked for his wallet and then shot the man as he stepped back. Those facts showed nothing more than a senseless desire to kill someone that was reached in a brief amount of time. (*Id.* at pp. 1009-1010.) As just set forth, viewing the facts most favorably to the judgment, the evidence shows that Gallardo in fact premeditated and deliberated before killing Guzman.

2.     *Ineffective Assistance of Counsel Claims*

       2.1  Generally Applicable Principles

Gallardo contends that he received ineffective assistance of counsel because his lawyer failed to object to several gang-related references by witnesses or to the prosecutor's purportedly misleading argument to the jury concerning the time required to deliberate and premeditate. Claims of ineffective assistance of counsel entail deficient performance assessed under an objective standard of reasonableness, and prejudice measured by a reasonable probability of a more favorable outcome absent the deficient performance. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 48.) The failure to make a meritless objection does not constitute ineffective assistance of counsel. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1038.)

6

A prosecutor commits misconduct when he uses deceptive or reprehensible methods to persuade the jury. When a claim of misconduct is based on the prosecutor's jury arguments, we determine whether there is a reasonable likelihood that the jury improperly construed or applied the disputed remarks. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 427.)

### 2.2. Gang Remarks by Witnesses

Gallardo contends that his lawyer failed to object or made improper objections to several gang references made by witnesses: (1) the girl who reported seeing Gallardo in the front yard described him as a Cholo (no objection); (2) Onofre, the terrorist threat victim, offered for the first time at trial that, in addition Gallardo having said he was Junior from the Barrio and would come back with his homies, Gallardo also said he belonged to a gang, showed him his tattoos, said "You don't know who you're dealing with, I am part of Salvatrucha," and said he would kill Onofre when he came back (no objection); (3) after Larios testified that he went to get his gun because he heard Cholos were around, he explained that a Cholo was a gang member (no objection); (4) Cristina Mendoza testified that the shooter looked like a gangster, prompting the incorrect and unsuccessful objection that the answer was speculative; (5) another witness, Gustavo Mendoza, also described Gallardo as a Cholo (no objection).

As Gallardo points out, evidence that a defendant belongs to a gang is highly inflammatory and should be carefully scrutinized before it is admitted. (*People v. Montes* (2014) 58 Cal.4th 809, 859.) And, as Gallardo also notes, his trial lawyer was aware of the need to shield the jury from such evidence to the extent possible, as evidenced by her successful pretrial motion to bifurcate the trial of the gang benefit allegations. According to Gallardo, this makes all the more inexplicable his lawyer's failure to properly object to the gang-related testimony set forth above. Only belatedly did defense counsel step in to exclude such evidence, successfully objecting past the midway point at trial to evidence about a 911 call about the shooting, where the caller described the shooter as a gangbanger.

7

We analyze separately the evidentiary claims related to the events at the party at which Guzman was killed and those dealing with what happened the next day at the neighbor's house (defendant's contention No. 2, above).

2.3  <u>Gang Testimony In Connection with the Guzman Killing</u>

We find no fault in defense counsel failing to object to the first instance of disputed testimony, where the witness described Gallardo as a Cholo.  Its apparent reference to gang members may not be obvious to all, and counsel might not have wanted to draw attention to it.

We understand Gallardo's concerns about the prosecutor's question to Larios, and Larios's answer, that the term Cholo meant gangster, and the two subsequent references to Gallardo having looked like either a gangster or a Cholo.  Even if an objection might have been sustained to some of this testimony, we find there was a reasonable tactical decision to not object, and, in any event, any failure was not prejudicial in light of the far more damaging gang evidence that was properly introduced in conjunction with the section 422 threats to neighbor Onofre, as we discuss next.

2.4  <u>Gang Testimony as Part of the Threat Against Neighbor Onofre</u>

Testimony about the threats against Onofre was introduced in two parts.

First was the statement that Onofre made to the police that Gallardo said he was Junior from the Barrio and would return with his homies to "fuck him up," and, "You don't know who you're messing with." There is no doubt that the statement was Gallardo's boastful threat that he was a gang member.  This evidence was not only relevant but critical to the prosecution's case under section 422 (count 2) that Gallardo had made a terrorist threat to Onofre.  On appeal Gallardo tacitly acknowledges so by not asserting error in the admission of this testimony.

Gallardo does complain about the second part of this evidence – Onofre's "surprise" testimony that Gallardo said he belonged to the notorious Mara Salvatrucha gang and threatened to kill him.  On appeal he argues that trial counsel should have objected under Evidence Code section 352.  We reject that argument.  First, the testimony came in after the "Junior from the barrio" and "homies" testimony of which Gallardo

8

does not complain, which properly introduced the gang aspect of the case. Second, admittedly, Onofre's live testimony was more damaging than the version he told the police, but it was also of particular relevance and probative of the sustained fear element of the section 422 charge. Trial counsel cannot be faulted for making an objection that surely would have been overruled.[1]

2.5. <u>No Objection Was Warranted to the Prosecutor's Jury Argument</u>

In order to illustrate how quickly premeditation and deliberation can occur, the prosecutor gave as an example a driver who "approach[es] a stale yellow light. You're getting close to the intersection, and in your mind you are going to make a decision. Am I going to go for it, or am I going to hit the brakes? How fast is that decision in your mind? Do I go or do I stop? Do I hit the brakes or do I gun? [¶] What are you doing when you are watching circumstances, seeing if there are cars to the left, to the right, other lights, pedestrian, cars ahead of you? You are deliberating. You are actively weighing the consequences for and against your conduct behind the wheel of a car. Do you stop or do you go? That's how fast deliberation can take place."

---

[1] The impact of this surprise testimony was mitigated by what happened later in the trial. The prosecutor made it a point to call the police officer who took the report from Onofre and have the officer confirm that Onofre never reported those comments. Gallardo's counsel hammered that point home by having the officer repeat that testimony on cross-examination. The prosecutor also never mentioned the disputed evidence as part of his jury arguments. Therefore, the jury was likely to conclude that Onofre was exaggerating or imagining the new testimony and therefore disregarded it. In short, even if an objection to that testimony had been warranted, the potential prejudicial effect of that testimony was severely undercut by the prosecutor's efforts to remedy what appeared to be surprise testimony.

In addition, Gallardo had juvenile adjudications for attempted murder and unlawful possession of a firearm, and he testified that he "participated" in an attempted murder, although not as the shooter, and participated in unlawful weapons possession. Therefore, the jury properly heard evidence that Gallardo was in a gang, had unlawfully possessed firearms in the past, had taken part in an attempted murder, and had made gang threats. The additional prejudicial effect of Onofre's testimony was minimal.

Defense counsel did not object, but instead told the jury during her argument that premeditation could not be a last-second decision, and that a decision to kill that was rash or impulsive could not amount to deliberation and premeditation. In rebuttal, the prosecutor told the jury that premeditation and deliberation could occur while driving through a stale yellow light. For instance, the prosecutor said, Gallardo had taken the time to shift his beer bottle from his right hand to his left hand in order to remove the gun from his pocket and fire it, providing him sufficient time to premeditate and deliberate.

Gallardo contends his lawyer rendered ineffective assistance by failing to object to the prosecutor's argument because he mischaracterized the test of premeditation and deliberation as something akin to the snap of a finger. We disagree.

Although better analogies may exist, we believe that, by linking the time involved with the careful weighing of various relevant circumstances, the prosecutor's analogy fairly described how quickly premeditation and deliberation may occur so long as the defendant adequately reflected on his actions ahead of time. (*Cage, supra,* 62 Cal.4th at p. 276; *Nazeri, supra,* 187 Cal.App.4th at p. 1114.) We therefore conclude that no objection was warranted and that no ineffective assistance of counsel occurred. (*People v. Cunningham, supra,* 25 Cal.4th at p. 1038.)

## DISPOSITION

The judgment is affirmed.


                                                          RUBIN, J.

WE CONCUR:



            BIGELOW, P. J.



            GRIMES, J.

10